UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

Common Purpose USA, Inc.,                  :
                                           :
            Plaintiff,                     :
                                           :
      v.                                   :
                                           :
Barack Obama, et al.,                      :    Civil Action No. 16-345 (GK)
                                           :
            Defendant.                     :

---

## MEMORANDUM OPINION

Plaintiff, Common Purpose USA, Inc. ("Common Purpose"), alleges that Defendants, the United States, the District of Columbia, and various officials of both governments, have violated the due process rights of Plaintiff's members by allowing them to be subject to past gun violence and the threat of future gun violence. Plaintiff seeks declaratory relief, which it believes will eliminate the threat of future gun violence against its members.

This matter is before the Court on Defendants' respective Motions to Dismiss. Upon consideration of the Motions, Oppositions, and Replies, and the entire record herein, it is evident that the Court lacks jurisdiction to hear Plaintiff's Complaint, and the Motions to Dismiss are **granted**.

## I.    BACKGROUND

Common Purpose is a domestic non-profit organization. Complaint at 5. Its members are direct or indirect victims of gun violence in the United States, including the District of Columbia. Id. However, Common Purpose has not identified a single member of the group. See Id. A paraphrased statement of its mission is that it seeks to advance an understanding of the United States' Constitution that reduces gun violence. Complaint at 5.

Plaintiff brings this action against President Barack Obama, Loretta Lynch, Attorney General of the United States, Vanita Gupta, Principal Deputy Assistant Attorney General, Thomas Brandon, Deputy Director of the U.S. Department of Justice and head of the Bureau of Alcohol, Tobacco, and Firearms and Explosives ("ATF"), all in their official capacities, and the United States of America (collectively "Federal Defendants"), as well as the District of Columbia and Cathy Lanier, in her official capacity as Chief of the Metropolitan Police Department of the District of Columbia, (collectively "District Defendants").

Common Purpose alleges that its members' constitutional rights have been violated by gun violence resulting from "the unfettered right to bear arms." Opposition to Federal Defendants' Mot. to Dismiss [Dkt. No. 5] ("Fed. Opp'n"); Complaint at 2-5. It

attributes this violence to the manner in which Federal Defendants

enforce and implement the various laws of the United States, Opp'n

at 10, and to the District's laws and regulations authorizing the

concealed carrying of firearms.   Complaint at 3-4.

Plaintiff's Complaint presents seven claims or issues to the Court:

> **"Issue 1.** Do the Federalist Papers and in particular Federalist Paper No. 29 and the practices and use of militias in the early years of this country's republic, establish that the "right to bear arms" was intended to be limited to a "well-regulated militia," subject to both state and Congressional regulation?
>
> **Issue 2.** Must interpretation of the Second Amendment adhere to and apply the basic principle that a statute, *a fortiori,* the Constitution, must be read in its entirety?
>
> **Issue 3.** If the answer to Issue 2 is affirmative, must the interpretation of the "right to bear arms" under the Second Amendment strike a proper balance between and among other Articles and Amendments to the Constitution, lest such Articles and Amendments be read out of the Constitution?
>
> **Issue 4.** In light of the presentations made and reviewed in Issue 3, must the "right to bear arms" be balanced against other constitutional powers and guarantees?
>
> **Issue 5** If the "right to bear arms" includes the right to modern weapons, such as attack weapons, against what foreign or domestic persons, entities, organizations may the right be exercised and who decides against whom and if and when to exercise such right?
>
> **Issue 6.** If the "right to bear arms" includes the right to use modern weapons, such as attack weapons, against domestic persons, entities, and/or organizations, does that create an environment conducive to anarchy?

**Issue 7:** Does the District's Concealed Carry laws interfere with the enforcement of federal laws?"[1]

---

[1] The Complaint contains several other issues, which the Court construes to be sub-parts of Issue 7:

"(B) Whether the amendments to the Firearms Control Act of 1975 (D.C. Official Code 16 §7-2501), as adopted by the District of Columbia (22 D.C. Code §22-4504.01, "DC Carry Law") must be interpreted consistent with the interpretation of the Second Amendment made in reference to the authorities enumerated in (A) preceding; (C) Whether if the provisions of the D.C. Carry Law are found to be in conflict with the interpretation of the Second Amendment made in reference to the authorities enumerated in (A) preceding, such provisions would be conflict with Constitutional guarantees and federal regulation of guns and gun ownership (see pages 29-31 following) making them subject to preemption under the supremacy clause of Article VI (U.S. Const. art. VI) (hereinafter references will be made to "Article" or "Amendment" when citing to these provisions of the Constitution); D) Whether the rules and regulations ("Concealed Carry Rules") adopted by the Chief of Police of the Metropolitan Police Department ("DC Chief of Police") authorizing the issuance of permits to carry concealed firearms ("Concealed Carry Permits") interfere with or prevent the enforcement of federal laws ("Federal Laws"); (E) Whether, if the decision in response to (D) preceding is in the affirmative, the Concealed Carry Rules and Permits are subject to preemption under the supremacy clause of Article VI of the Constitution; (F) Whether the DC Carry Law and Concealed Carry Rules and Permits deny United States citizens that reside in, work in or visit the District of Columbia due process and equal protection of the law in violation of the Fourteenth Amendment; and (G) Whether the DC Carry Law and the Concealed Carry Rules and Concealed Carry Permits should be enjoined from interfering with or preventing the enforcement of Constitutional rights and applicable Federal Laws?"

Complaint at 3-4.

Complaint at 6-7.

In essence the Complaint raises two sets of claims. First are the "Constitutional Claims": Issues 1-6, asking the Court to interpret the Second Amendment; and those parts of Issue 7 that ask the Court to declare that the District's concealed carry laws are unconstitutional. Second are the "Preemption Claims," those parts of Issue 7 asking the Court to declare that the District's concealed carry laws are preempted by federal law.

Plaintiff brings these claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201, 2202 ("the Declaratory Judgment Act"), and the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. See Complaint at 4-6.

Federal Defendants brought a Motion to Dismiss, arguing that, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court lacks jurisdiction and Plaintiff has failed to state a claim. Motion to Dismiss [Dkt. No. 4-1] ("Fed. Mot. to Dismiss"). Plaintiff filed an Opposition to the Federal Defendants' Motion, Fed. Opp'n, and the Federal Defendants filed a Reply. Reply in Support of Federal Defendants' Motion to Dismiss [Dkt. No. 8] ("Fed. Reply").

The District Defendants also filed a Motion to Dismiss, in which they joined the Federal Defendants' arguments and

additionally argued for dismissal due to improper service of process pursuant to Rules 12(b)(2) and 12(b)(5).   District of Columbia's Motion to Dismiss [Dkt. No. 9] ("District Mot. to Dismiss").   Plaintiff filed an Opposition, Plaintiff's Memorandum in Opposition to the District of Columbia's Motion to Dismiss [Dkt. No. 10] ("District Opp'n"), and the District Defendants filed a Reply.   District of Columbia's Reply [Dkt. No. 11] ("District Reply").

## II.   STANDARD OF REVIEW

### A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

As courts of limited jurisdiction, federal courts possess only those powers specifically granted to them by Congress or directly by the United States Constitution. <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). The plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction to hear the case. <u>See Shuler v. United States</u>, 531 F.3d 930, 932 (D.C. Cir. 2008). In deciding whether to grant a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the court must "accept all of the factual allegations in [the] complaint as true." <u>Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin.</u>, 402 F.3d 1249, 1253

54 (D.C. Cir. 2005) (quoting <u>United States v. Gaubert</u>, 499 U.S. 315, 327 (1991)).

Nonetheless, "[t]he plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." <u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001). The Court may also consider matters outside the pleadings, and may rest its decision on its own resolution of disputed facts.[2] <u>See Herbert v. Nat'l Acad. of Sci.</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).

## III. ANALYSIS

### A. The Court Lacks Jurisdiction Because Plaintiff Lacks Standing and Because There Is no Case or Controversy

#### 1. Standing Is a Jurisdictional Requirement of Article III

Article III of the Constitution limits the jurisdiction of federal courts to certain "Cases" and "Controversies." <u>See</u> U.S. Const. art. III, § 2. "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the

---

[2] As discussed below, the Court lacks jurisdiction to hear this case, and therefore, resolution of the Federal Defendants' arguments that Common Purpose has failed to state a claim and the District Defendants' argument that the they were not properly served are unnecessary to disposition of these Motions. Accordingly, the relevant standard of review under Rules 12(b)(2), 12(b)(5), and 12(b)(6) have been omitted for the sake of brevity.

constitutional limitation of federal-court jurisdiction to actual cases or controversies." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013) (internal citations omitted). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." Id. (internal quotation marks and citation omitted).

"[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, (1992) (internal quotation marks, citations, and footnotes omitted).

Ordinarily, an organizational plaintiff may attempt to show standing in one of two ways. First, under the theory of "organizational standing," an organization may sue on its own behalf in order to protect its own interests. Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1427-28. (D.C. Cir. 1996). Alternatively, under the theory of "associational

standing," an organization may sue on behalf its members to protect their interests. <u>Hunt v. Washington State Apple Advertising Commission</u>, 432 U.S. 333, 343 (1977); <u>Air Transp. Ass'n v. Reno</u>, 80 F.3d 477, 483 (D.C. Cir. 1996).

### 2. Common Purpose Lacks both Organizational and Associational Standing

In order to establish organizational standing, a plaintiff must show that it satisfies each of the traditional three prongs of the standing inquiry - injury in fact, causation, and redressability. <u>Nat'l Treasury Employees Union</u> at 1427. The alleged injury must be a "concrete and demonstrable injury to [the organization's] activities." <u>Id.</u> at 1427-28.

Common Purpose argues that it has suffered the requisite injury in fact because, if it is not granted standing, it will be hindered in its future ability to attract support and membership. Fed. Opp'n at 8. This argument is defective for many reasons. First, the alleged harm is not an injury for purposes of Article III because a plaintiff cannot manufacture an injury based on harms that result from its prosecution of the lawsuit itself. See <u>PETA v. USDA</u>, 797 F.3d 1087, 1093 (D.C. Cir. 2015).

Additionally, Common Purpose's alleged injury "hinge[s] on the independent choices" of third parties not before the Court, its current and prospective members. <u>National Wrestling Coaches</u>

Assn' v. Dept. of Education, 366 F.3d 930, 938 (D.C. Cir. 2004).
What these individuals might or might not do in response to a
ruling of this Court is "mere unadorned speculation," and
therefore, Common Purpose cannot establish either causation or
redressability. Id. Consequently, it lacks organizational
standing.

In order to establish associational standing a Plaintiff must
show that: 1) at least one of the organization's members has
standing to sue in her own right; 2) the interests the organization
seeks to protect in its lawsuit are germane to the organization's
purpose; and 3) "neither the claim asserted nor the relief
requested requires the participation of individual members in the
lawsuit." Hunt v. Washington State Apple Advertising Commission,
432 U.S. 333, 343 (1977); Air Transp. Ass'n v. Reno, 80 F.3d 477,
483 (D.C. Cir. 1996).

Common Purpose's Complaint fails to identify a single member
whatsoever, and failed to allege facts that would establish that
any identifiable member has standing in her own right.
Accordingly, it cannot satisfy the first prong of Hunt, and lacks
associational standing.

**B. The Complaint Contains only Generalized Grievances that Do Not Present any Case or Controversy**

Common Purpose's Complaint contains a flaw more fundamental than its inability to check one of these two doctrinal boxes. It represents the kind of general complaint about the administration of the law that the courts have long held to be inappropriate for judicial resolution.

Article III standing requires a "concrete and particularized injury." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citation and quotation marks omitted). A party challenging a governmental action must show that it has been directly injured by the action; it is not enough for a party to show an undifferentiated, "general interest common to all members of the public." United States v. Richardson, 418 U.S. 166, 176-77 (1974) (quoting Ex parte Levitt, 302 U.S. 633, 636 (1937)).

Courts "have consistently held that a plaintiff raising only a generally available grievance about government -- claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large -- does not state an Article III case or controversy." Lance v. Coffman, 549 U.S. 437, 439 (2007) (internal quotations marks omitted).

Common Purpose's Complaint is the quintessential generalized grievance. It is devoid of any concrete allegations, such as specific actions of the various Defendants or specific harms suffered by Common Purpose or any one of its members. Instead, the Constitutional Claims are simply a request that this Court, in a factual vacuum, render an interpretation of various Constitutional provisions. Similarly, the Preemption Claims do not demonstrate that Common Purpose has any individualized interest in this litigation other than a desire to see the District of Columbia's concealed carry laws changed.

"The motion papers disclose no interest upon the part of the petitioner other than that of a citizen . . . That is insufficient." Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 219-20 (1974) (internal citations and quotation marks omitted). Accordingly, this lawsuit presents no case or controversy within the meaning of Article III, and therefore this Court lacks jurisdiction.[3]

---

[3] As Common Purpose cannot establish Article III standing, it is unnecessary to address its argument that it has third party, or *jus tetri*, standing. See Sands v. NLRB, 825 F.3d 778, 784 (D.C. Cir. 2016) ("[plaintiff] must show that he has standing under Article III, and that he satisfies third party, or *jus tertii*, standing requirements.").

-12-

### C. Remaining Arguments Unnecessary

As the Court lacks jurisdiction to hear Plaintiff's claims, it is unnecessary to address Defendants' argument that Common Purpose has failed to state a claim and the District Defendants' argument that it failed to properly serve them.

### IV.   CONCLUSION

For the foregoing reasons Plaintiff's Complaint is **dismissed.**


Date: December 30, 2016

_Gladys Kessler_
Gladys Kessler
United States District Judge

-13-